Case 19-1036, Peter Hudson v. City of Highland Park, MI et al., argument not to exceed 15 minutes per side, with the 15 minutes to be shared by the appellees. Mr. Levi, you may proceed for the appellant when ready. Good afternoon, Your Honors. Good morning. I'd like to reserve five minutes for rebuttal, please. Earlier this year when I read Justice Roberts' opinion in Department of Commerce v. New York when he quoted Judge Friendly as follows, judges are not required to exhibit a naivete from which ordinary citizens are free, I immediately thought of this case. It wasn't the first case I thought of when I read that. Where are you going? Why don't you explain yourself? I think that here we have a situation where it's really undisputed that these firemen in Highland Park were watching pornography in the dining hall on a city TV, which was against departmental orders. Some of them were married. They were bringing women from the street back to the firehouse and having sex with them either in the men's dormitory or in closets. The director of H.R. Miss Jackson was meeting a married fireman behind the firehouse at night every time that he was on duty. My client is a devout Christian. From a young age, he was instilled with principles that sex outside of marriage was immoral and that pornography was immoral. So naturally when he saw this happening, he objected to it. Now Judge Murphy wants to focus on the sex as a form of harassment that my client is That is not the form of harassment that I'm complaining about. The form of harassment is that when he spoke out about the immoral conduct in the department, not only because of his religious beliefs, but also because it was impacting the performance of men's duties. They were missing fire runs because they were with women and they weren't performing routine maintenance. So let's focus on the different claims. So Title VII is one of the claims, right? There's two Title VII. One complaint is that he was fired based on his faith, right? And the answer, you know how this works, you've got the McDonnell-Douglas standard and one thing towards the end is you've got to show their explanation was pretextual and they gave an explanation was that he'd done two things that violated the rules and that was their explanation. Why doesn't that suffice as a matter of law? First of all, we have the timing. A year before he was discharged, my client filed a complaint with MIOSHA, the Michigan version of OSHA. Time intervals are tough, but a year is not a great one if all you're relying on is timing. Usually the timing... That's not the only timing. Okay, so keep going. A month before he was discharged, another fireman who was friendly with my client wrote an email to the HR director complaining that a fireman and his wife were having sex in the fire station all over the station in public venues and he objected to it. He made it anonymously because he was afraid he would be retaliated against if they knew who made it. He says in his declaration that after that, there was a rumor going around the fire station that my client had sent the email. A month later, my client was fired. Now there's also the usual way you get around the pretext argument is by saying someone else did the same thing and they weren't fired and they didn't share this faith, for example. That's the comparator point. We have that. Well, you have it on one point. You don't have someone that had both problems though, at least I didn't think. Well, we have Paul Bates and Paul Bates, my client was accused of reporting $100 over three years period for fire engine operator pay and he says that he reported it based on what he was told how to report by his commanding officer. Then since evidently that wasn't enough for the chief to use to fire my client, he went to my client's second job, found that there were days that he claimed time at that second job and the same days he claimed time at the fire department. My client has an explanation for that. He worked on the weekend at the school and the principal told him that instead of putting your time down on weekend because you won't get paid for weekend work, I want you to put it down on a day during the week when you weren't actually here at the school working. There's no affidavit or other evidence from the school on that issue, right? The school was dismissed from the case on that issue, but there is an affidavit from my client. Yes. If the question is whether the invocation of this conduct was pretextual, the fact that your client chose not to offer an explanation, this double dipping allegation came up spontaneously in one of these mediation sessions is my understanding. Your client was advised and chose not to speak for fear of self-incrimination, at which point he was fired summarily. Is that an accurate statement? He didn't speak because the meeting was supposed to be about the alleged FEO pay violations. They sprung this on him and he didn't have a chance to explain to his union representatives. But he chose not to speak at the meeting. I'm not trying to imply it shows he was guilty of anything, but the point is he chose not to speak at the meeting, they fired him on the spot. So they didn't know about any of these explanations, which undermines the idea that this reason was pretextual, because he had not offered the other side of the story to them. The reason it was pretextual is the reason that Judge Sutton mentioned. We have a fireman who was not religious. He was self-allowed. Judge Sutton said there were two problems that your client had. One, for Mr. Bates, that's not the same conduct, which is usually the comparator requirement. But the case law on comparators says it doesn't have to be exactly the same conduct, that minor differences are not the same. And I'm saying that two violations is different from one, I would say. If you're violating an employer's policy, two seems materially different from one. If the other one is $6,000 and the police chief facilitates your fraud, I think that the comparator is even more serious than what my client is alleged to do. I mean, this fireman, Bates, was supposed to get compensation, the difference between his pay from the Army for reserve duty on the weekends and what he was supposed to be We presented during depositions, which was authenticated by the new HR director and the payroll director, that in September, two months after my client was fired, Bates had received $6,000 in pay that he didn't deserve. And then in October, he asked for more, and the new HR director said he's not entitled to it. And the payroll director said that when someone is on military leave, it's the chief. Chief Hillman, a defendant in this case, puts down the number of hours that this person is entitled to be paid for while they're on military leave. So it had to be Hillman that put down, and my client said he saw these sheets, and Hillman had put 24 hours of pay deserved when this person, Bates, was not there working and was only entitled to two weeks differential pay. So it was not only that Hillman didn't sanction Bates for what he did, Hillman was aiding and abetting Bates, and Bates is an atheist and my client is a devout Christian. So there you have the comparator. We also have... Was there evidence that they treated Bates better because he was an atheist? In other words, is this one of these things where we're just noticing two differences, or is there actually some evidence that his position as an atheist helped him? It helped him in that he was one of the main persons involved in the sexual misconduct in the department, and this was something that Hillman, the chief, had participated in this type of conduct before he became chief. So the circumstantial evidence is that Hillman was protecting Bates and his kind. Bates was one of the main perpetrators of bringing in women, even though he was married and his wife was also a fireman. He was one of the people that put pornography before my client while he was eating. He was one of the main persons who derided my client for wearing a cross, for saying grace, and for believing in God and Jesus. You're a little short on time. The district court dismissed your First Amendment retaliation claim for failure to state a claim. In your blue brief, I'm just trying to make sure I understand your argument, I don't see any citation to Iqbal, Twombly, 12B6 standards. Instead, it seems that you're saying the district court violated your due process rights by the manner or the timing in which it took that up. Is that correct? I had no prior notice or opportunity to respond. You seem to have one argument with respect to First Amendment retaliation on appeal. Have I described it correctly? Due process. Yes. Is there any authority for the idea that the district court can . . . that this is some kind of due process violation, the manner in which this came up? I've cited the cases in that section. Which case do you think is your best comparator? I'm sorry, forgive me. This most similar case. I'd have to look it up, frankly, Your Honor. One doesn't pop to mind that you think is the best case? No. All right. We'll take a look at it. It's built into Rule 56. You have five minutes for rebuttal. Maybe you can think . . . Huh? Maybe on rebuttal. You have five minutes for rebuttal. Maybe you can think of a best case. May I ask you one question on the complaint that Hudson filed with OSHA? In your complaint, that's paragraph 22. It says that he complained about improper operation of brakes, the jaws of life, the air bottles, but it doesn't say that he included in that complaint allegations related to this lawsuit. That's correct. That's correct. It was simply a report that firefighters are not doing what they should to maintain the safety and workability of the equipment, right? Correct. Okay. Thank you. After that, Judge Holman said, I'm tired of Hudson's complaints. Hudson had not made an OSHA complaint before, therefore, Holman was talking about his complaints about the sexual misconduct in the department. But Holman denies knowing about the OSHA complaint, right? That I'm not sure of. It would create an issue of fact if he did. Dispute of material fact. Thank you. All right. Thank you. Good morning. May I please support James McGinnis on behalf of Appley, Hillman, and City of Highland Park? I'll speak on religion and speech, and my colleague, Mr. Bernard, will speak on the due process. And I'll take 10 minutes. He will take five minutes. The heart of the matter for me is that the appellant is conflating religion and morality. He is complaining that this pornography and extramarital sex is a religious issue, when in fact, it just offends his sensibilities about conduct. And he assumes that... Are you making the point there's not really a true discrimination based on faith threshold problem? Yes. I mean, I get your point, but aren't there some examples of making fun of him when he says grace before a meal or wearing a cross? I mean, some things that it's not conduct related, that's directly related to his exhibiting his faith. Yeah. It has religious overtone, but what is happening is he says, this behavior is immoral. It offends my sensibilities. So he attacks his coworkers, and they retaliate. And he says, this is something that the employer should, one, know about, though he doesn't inform the employer, and two, this is something that the employer should stop. Would you agree that if an employer said to a Christian employee, listen, I have no problem with you being a Christian, I just don't want you acting like one. Don't bring it up. Don't act on your beliefs. Don't try to be a witness at lunch, whatever. If an employer said that, is that a violation of free exercise? That comes close, but I don't think so. Why wouldn't it be? Well, the question is legislating behavior. Now, what he says, for example, is that they missed these fire runs because they were having sex and pornography was being consumed. Now, I'm not sure about the difference between pornography here and adult entertainment. That's his characterization based upon his own value system. I don't know what the difference is either. I mean, I thought those were his thoughts, too. So the question then becomes, is this protected speech? I mean, just because you say that it's a matter of public concern and there's some religious overtone that we can conflate the two. Consider, for example, that the firefighters were knitting muffins for the children of a local orphanage, and they missed fire runs. Could you therefore say that they shouldn't be knitting in their spare time? What he's saying is that they're watching pornography and having extramarital sex that's religious, that's offensive. So therefore, it's a matter of public concern, and I can speak on it, and I can instigate a confrontation, and if they retaliate and mock me, that that's mocking my religion. And I'm saying that he's spreading this notion of the First Amendment far beyond where it's supposed to go. Well, I guess you're talking about the faith claim now, but I guess I was going to say he clearly has free speech arguments here, right, because, you know, he files the OSHA complaint. That's classic free speech. He's filed the OSHA complaint, and that is a matter of public concern. However, how they spend their spare time is not. That's a private matter. Unless they're not doing their job. Pardon? Unless it's interfering and they're not doing their job, which is what he's claiming, right? He's claiming not that they're not doing their job. He's claiming that they're engaging in harassment based upon religion. No, he said they're not doing their job, and they're not going on runs.  They're not going on runs. Judge Stranch is dead on with her characterization. They're not going on, they're missing fire calls, they're failing to keep equipment up, they're not keeping the firehouse clean, they're not doing their jobs. Correct. And he's saying... So that's a matter of public concern, right? Because we don't want to pay firefighters to not do their jobs. Correct. And he's saying that the retaliation against me is not because I reported it, it's because of my religion. Well, maybe he's saying both. You can't discriminate against me. I have a First Amendment right to speak to matters of public concern, and you cannot impact or discriminate against me because I have done that. And then the second prong is I am the discriminatory laws protect my faith, and I can speak about my faith. You don't have to agree with me, but you cannot make the place where I work so hostile because you're mocking and making fun of the fact that I say a prayer, or I wear a cross, or I won't watch pornography, which I declare is a tenet of my faith. The question is whether or not his co-workers can respond to his criticism and whether that constitutes unwelcome harassment based upon religion that can be attributable to the municipality when the supervisors did not know about that. And so this is why I say... They said the chief was there. They said the chief was on site and saw this and then told another new employee, don't hang out with this guy because we're not doing that, he's a problem. He says a couple of things. He says that the reason he was mistreated was because he was not a part of the clique. And he also says in his amended complaint, he never conveyed that to the chief because he thought that it would be futile. So he's all over the place in terms of whether or not the employer knew about it. But it is not... With the chief saying to another employee, do not hang out with this guy, he's a problem. Isn't that competent evidence that he knew? The chief... The chief, yeah. The chief said to the new firefighter, do not hang out, do not go around this guy, do not hang out with this guy, he's a problem. He said, don't associate because you will be disliked like he is. Now, he's saying that the reason that the chief said that was religious. There's no connection there between any religion and any... Well, isn't that a dispute of material fact? Pardon? Isn't that a dispute of material fact? No, the chief merely said he's disliked. He didn't say he's disliked because of his religion. He didn't say don't associate with him because of his religion. He's saying he's disliked. His co-workers don't like him. And this is kind of the heart of the matter. He is the instigator. He is criticizing his co-workers' behavior based upon his value system. And then he's saying the court and the law protects me when my co-workers respond to my criticism that I am a hapless victim when, in fact, I am the instigator of the conflict. That is a struggle throughout discrimination law all the time. I recognize that concern. But I don't think we can say that there's no discrimination claim because you started it. I don't think that is a defense to treating somebody differently or creating a hostile work environment because you started it. No question in this case, he started it. The record is clear. But the question becomes what level of response is appropriate? And can you then create this ongoing dispute in the workplace that becomes we won't speak to you, we laugh at you if you pray, we make fun of the cross you have, we tell new people not to associate with you. That is a question of whether there is a dispute of material fact about, isn't it? Isn't that a dispute of material fact about whether they have created a work environment that is hostile based on his religion? He didn't say that his employer created that environment. He said his co-workers created that environment and he's attributing that to the employer. And his employer allowed it, is what he said. They did it and he let them do it, right? I mean, isn't that the allegation? That is his allegation, but the district court said there's no relationship between that allegation and any retaliatory adverse conduct by the employer. And I think if you look at the Mount Healthy versus Doyle decision, it's got to be a but that the employer, the plaintiff had to show but for this action, the motive of the employer would not have been terminated. And the record establishes that he was terminated for other reasons. Why wasn't the instigator, to get back to your point, why aren't the instigators, the people who are watching pornography in the workplace and having sex in closets, et cetera? Now, he says in his deposition, he never saw any sex. That he just assumed that they were having sex as a matter of fact. Well, I mean, on summary judgment, certainly we're going to assume this stuff was going on. I mean, I think there's enough here. Okay. Right? Yeah. He says also... You know, it's like blaming the messenger. You know, somebody does something bad and forces you to then have to say something about it. Now, you're the bad guy. We've all been in that situation. Yeah. So isn't it a bit unfair, at least, to say that he's the instigator? Well, let's go a step further. He makes a comparison between him and Mr. Betts. Mr. Betts is accused of having sex with his wife in the station. It's extremely unprofessional if that, in fact, is going on. But the criticism and the comparison that he makes is based upon extramarital sex. He's saying that Mr. Betts and I... Yeah, all right. Well, you know, you can carve that one out. Well, whatever. I mean, I don't know if there's a Christian rule about, you know, sex in the workplace, maybe. Yeah, I don't want to go... But everything else seems pretty tied. I don't want to go... Well, that's all the questions I have. Did you... We're sharing time? Yes. All right. Go ahead. Thank you, sir. May it please the Court. Paul Bernard on behalf of Appellee McKinney-Jackson. And as Mr. McGinn has indicated, I'm going to be also addressing any issues about the procedural due process claim from both perspectives of the city and Ms. Jackson. But I wanted to start by talking about some of the causation questions on the retaliation claim with respect to Ms. Jackson. Which, oh... First Amendment retaliation. First Amendment retaliation? Right. But he's not arguing that, right? I mean, he's making... He's not saying he pled causation. I mean, the plaintiff expressly said at the podium here today that at least on appeal, he's just saying the district court violated due process in the manner in which it adjudicated. Well, I'm not sure the rest of his brief doesn't talk about this. So go ahead and say what you were going to say. I might have a slightly different reading of his brief. Okay. Well, the point I was trying to make, Your Honors, was that Mr. Hudson's counsel started out by saying there's certain undisputed facts that everybody knew about Mr. Hudson's moral opinions. Everybody knew that he was complaining about work not being properly done, whether it's the maintenance equipment or being available for fire runs or otherwise. Everybody knew that Ms. Jackson was having an affair with somebody in the parking lot after work and that everybody knew about that. Ms. Jackson... There's no evidence that Ms. Jackson was present or aware of what was happening in the exchanges between Mr. Hudson and the other firefighters. He alleges that Mr. Hillman was present at these things, but she was never present at them. She didn't work in the fire station. Nobody complains to either Hillman or Jackson about Mr. Hudson being discriminated against, oppressed, bothered for any of his opinions, whether you characterize them as religious or moral or complaints about matters of public concern. All the evidence shows she just wasn't aware of that. Mr. Hudson's claim that Ms. Jackson's retaliating against him in her individual capacity is that he heard a rumor from another firefighter who said, I'm having sex with Ms. Jackson in the parking lot every day after work. And first Mr. Hudson alleged that he saw Ms. Jackson doing this, but in fact later on admitted in his deposition that he didn't actually see it. He's just relying on this boasting by his colleague. And there's no evidence that Ms. Jackson was aware,  all on the same page as to what you're talking about. We're on First Amendment retaliation, free speech retaliation? Correct. That was one that was dismissed, the motion to dismiss as opposed to post discovery. Correct. So doesn't that raise the burden a little more here? I mean, isn't the norm here to do the best you can with what you've seen? Notice pleading, the allegations are plausible, you allege the key elements, you go to discovery. Isn't that the norm? Yes, Your Honor. But I think there's also, I think you can affirm on the basis of the fact that the evidence is in on this question. So we could convert it to a summary judgment? Yes, Your Honor. But isn't that unfair to him? I mean, he didn't know in discovery, he had a duty to get evidence to support a summary judgment opposition when he thought the claim was out of the case. Judge Murphy's a great judge. What happened here? What happened with the decision on the motion to dismiss? I was just trying to figure out what happened. He'd heard argument and it didn't seem like the plaintiff was really focused on this, so he thought it really was the tail and let's get this out of here? As I understood it, I think Judge Murphy looked at the elements of the cause of action that were alleged in the complaint and didn't see a causal connection between the conduct and the... I don't know. I have it right here. It seems like I get you there in terms of motion to dismiss land. I mean, anyway, respond. I want your response. And I think, you know, the other thing is I don't think that in connection with the question of retaliation and the First Amendment discrimination, there was enough alleged to overcome qualified immunity, which is an argument that I think we make in the brief. So... But the qualified immunity part turns on how bad or not bad the underlying retaliation was, which usually you're going to learn in discovery. Well, again, Your Honor, I think having taken your point about the availability of discovery, I think there was still... Affirming the judgment with respect to... When you say that, another way of putting your point is, what more discovery was he going to get to deal with, for example, the pretext argument? Because pretext would still apply to First Amendment free speech retaliation. And I guess you would probably argue there's no incentive to not get all the evidence for one as for both. But it still seems very strange to do that. There was also the allegation that his constitutional due process rights were deprived because... For the same reasons as his First Amendment rights. And with respect to Ms. Jackson, there was evidence taken on all that stuff that would have applied to both. I mean, there wasn't anything unique about Ms. Jackson's position with respect to the First Amendment stuff as against the constitutional due process. Do you... If you've already done this, just tell me. Do you want to make an argument specific to the complaint as opposed to the record for summary judgment? Well, I think we do that. I'll stand on the brief with respect to that. You want to give me the headlines just to remind me? Sure. That he didn't adequately allege the elements of causation under Saussure, and that if you apply the standard from Twombly... It's too conclusory? Yes, that's correct. He says he filed a complaint with OSHA, right? So that's there. He says he's fired. What I'm just trying to figure out... Is the word causation? Is that the... He doesn't allege that Jackson knew about any of that stuff. You're handling this for everybody, though, right? Well, no, I'm handling it with respect to the retaliation. I'm handling it with respect to Ms. Jackson. And with respect to procedural due process, I was going to make an argument for everybody, but... Okay. Well, I think you've kind of zeroed us in on the particular point that you're saying is absent here. Yes. But what would you say... Well, yeah, I'm not going to put you in that position. I mean, because Hillman's a slightly... I agree with you. Jackson... There's not as much about Jackson. The question is, if there's enough for Hillman, is it... You're going to have discovery on one. It seems strange not to have discovery on the other. Well, I mean, with respect to Hillman, there are allegations that he's present when all this stuff is happening, and there aren't those kind of allegations about Ms. Jackson. Okay. I see my time is up, but if you have any questions about the procedural due process issue, I'd be happy to address them. Otherwise... I don't think so. Thank you. Okay. The primary cases on the violation of due process on my First Amendment claim would be 286, 6th Circuit, 2013. Wagenkent v. United States, 533, F3, 412 at 417, 6th Circuit, 2008. And Katz v. Chalker, 142, F3, 279, 286, 6th Circuit, 1998. Which... Just... I'm sorry for this ministerial question. Which of your counts was the First Amendment retaliation? Do you remember? You've got... I believe it was the third. Which you called deprivation of right to freedom of speech under the First Amendment. Is that the one? Right. Okay. I just wanted to know which one. Thank you. I'd like to point out that under the matter of public concern, that was not disputed by the trial judge. The only thing he disputed about my... The requirement that a First Amendment claim that speech have been on a matter of public concern, that particular issue was not disputed by the trial judge. He agreed that this speech was on a matter of public concern. So with regard to Ms. Jackson and the First Amendment claim, what we have here is... My client didn't need to know what was going on in the car between the fireman and Ms. Jackson every night that the fireman was there to know that Ms. Jackson was violating a policy of the city of Highland Park. One of my exhibits was... So free speech retaliation as to Jackson, what are the key facts there that she even knew about? Did she know about the OSHA complaint? Do you even... Do you allege that? I don't remember seeing... I don't know whether she knew about the OSHA. But you don't allege that? I don't allege that. Okay. What do you allege that she knew about his free speech? I mean, what are the things where you actually say, she knew he was talking about how good Christians behave, or she knew that he was complaining about people weren't ready to report for work or handle an alarm. Do you... Can you tell me where that is? She knew he was a devout Christian because there was an episode... Is that in the complaint? It's in his deposition. Okay. So that doesn't help you that this part of the case is about what Judge Murphy dismissed it on 12b-6, on the complaint. Correct. And it seems to me a close question whether Jackson... You have enough in the complaint for Jackson. That seems like a close question to me. I understand. It's a close question. It's the fact that... Want to try to push in the end zone here? Are you backing up or moving forward? I can't tell which way you're going. Do you have allegations in the complaint that say, that cover Ms. Jackson relative to any claim? That's the question because we're at 12b-6. Let me help you. I'll tell you what you say. Because I've got it here and then you can maybe help a little bit. This would suffice in a way because it says, Hillman and Jackson fired Hudson because they objected to his religious convictions and wanted to stop his outspokenness against immorality of Hudson. So you've got a because of, you've got a causation. But after Iqbal and Chwambli, that doesn't work by itself. You have to have some facts. And I think the facts you have about Jackson are that she had an affair. She was part of the immorality in the fire department. Okay, but that's neither here nor there if she's not aware of his speech. Are you with me? I mean, you got to make some allegations that allow this to be more than just a conclusion. I understand. Okay. Well, anyway, go on to your next point. I want to talk about the due process claim up against Ms. Jackson because that's my primary focus with her. This circuit's case, Farhat, says that if there's some kind of procedure, specifically a union grievance procedure, that provides adequate due process, then that satisfies the due process requirement in Loudermill. And the converse is, if it doesn't, if it's not adequate, if the union procedure and the collective bargaining agreement is not, then it doesn't satisfy due process. Well, we have a situation where the union, the Police Officers Association of Michigan, disclaimed representation and they had a reason because the local officers who were against my client wanted to have a change in local leadership and it wasn't permitted because the election time wasn't up. So they withdrew. Therefore, we've got a collective bargaining agreement. Yes, your light's on. So finish up with a sentence or two without too many pending clauses. That would be great. When you don't have a collective bargaining agreement, when you don't, when you have a collective bargaining agreement but not an exclusive bargaining agent, then to have due process, you've got to offer something else besides the procedure. You've got to offer individual grievance and arbitration. When my client requested that, he was turned down and that was a violation. What is your strongest case supporting that conclusion? Farhat and the case of the Rogers versus 36th District Court, which was affirmed by this court. Okay, thanks to all three of you for your briefs and oral arguments.  The case will be submitted.